# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

HEATHER M.,[1]                      :    Case No. 2:24-cv-00019
                                    :
          Plaintiff,                :    Chief District Judge Sarah D. Morrison
                                    :    Magistrate Judge Caroline H. Gentry
vs.                                 :
                                    :
COMMISSIONER OF THE SOCIAL          :
SECURITY ADMINISTRATION,            :
                                    :
          Defendant.                :

---

## REPORT AND RECOMMENDATION[2]

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental

Security Income in August 2017. Plaintiff's claims were denied initially and upon

reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge

(ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a

"disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's

request for review of that decision, and Plaintiff filed an action with this Court.[3] The

Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C.

§ 405(g), pursuant to a joint stipulation by the parties. The Appeals Council remanded the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

[3] Assigned to District Judge Edmund A. Sargus, Case Number 2:21-cv-00978.

case pursuant to the District Court's order. The same ALJ held another hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed what is now her second action with this Court.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the Court **REVERSE** the Commissioner's decision and **REMAND** for further proceedings.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since July 23, 2017. At that time, she was thirty-eight years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[4] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-14 at PageID 2440-72), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[4] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in

4

the Social Security regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following

findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since July 23, 2017, the alleged onset date.

Step 2:     She has the severe impairments of peripheral artery disease (PAD) with bypass and stent placement, lumbar spine degenerative disc disease, obesity, ocular histoplasmosis, and choroidal neovascular membrane.

She has the nonsevere impairments of history of Kikuchi disease, gastroesophageal reflux disease without esophagitis, hidradenitis suppurativa, dysplasia, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD).

Step 3:     She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 CFR 404.1567(a) subject to the following limitations: "[S]he can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can occasionally be exposed to temperatures below freezing. She must avoid workplace hazards such as unprotected heights and machinery."

With respect to her Disability Insurance Benefits application, Plaintiff is capable of performing her past relevant work as a credit card clerk. For purposes of her Supplemental Security Income application, she is unable to perform any of her past relevant work.

Step 5:     With respect to Plaintiff's Supplemental Security Income application, and alternatively regarding her Disability Insurance Benefits application, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

5

(Decision, Doc. No. 7-14 at PageID 2445-61.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 2461-62.)

### B. The ALJ's Evaluation of Plaintiff's Mental Impairments

The ALJ found that Plaintiff's major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) are nonsevere. (Decision, Doc. No. 7-14 at PageID 2446.) The ALJ explained that he considered the "paragraph B" criteria and concluded that Plaintiff's mental impairments cause no more than mild impairment in any of the functional areas. (*Id.* at PageID 2446, 2450.)

The ALJ first summarized Plaintiff's subjective complaints in a December 2017 function report and Plaintiff's testimony at the June 2020 and August 2023 hearings. (Decision, Doc. No. 7-14 at PageID 2446-47.) Next, the ALJ summarized the mental status examination findings and Plaintiff's reports of participating in social and other daily activities that were documented in the progress notes from Plaintiff's psychiatrist and counselor. (*Id.* at PageID 2447-49.) The ALJ concluded:

> In summary, the record includes outpatient mental health counselling documenting [Plaintiff's] report of mental symptomatology, including anxiety, fatigue, and panic in public, but generally substantially normal mental status exam findings, including with respect to memory, attention, concentration, fund of knowledge, appearance, speech, language, thought process, and cognition, as well as significant activities of living, including art and craftwork, concerts, travel, and football game attendance (Exs. 2F, 5F, 6F, 11F, 25F, 31F, 52F, 55F, and 56F). She has attended numerous counselling and medical treatment visits without evidence of significant, ongoing difficulties interacting with various providers. The record fails to document that the severity of her mental conditions necessitated recurring emergency care or inpatient psychiatric hospitalizations. The summarized evidence supports a finding of "no" limitation to the functional area of

6

understanding, remembering, or applying information; "mild" limitation to the functional area of interacting with others; "mild" limitation to the functional area of concentrating, persisting, or maintaining pace; and "mild" limitation to the functional area of adapting or managing oneself.

(*Id.* at PageID 2449-50.)

### C.    Joe Panzner, L.I.S.W., M.S.W.

Plaintiff began outpatient counseling in August 2017. (AR, Doc. No. 7-7 at PageID 464-65.) She first met with counselor Joe Panzner, L.I.S.W., M.S.W. in March 2019. (AR, Doc. No. 7-12 at PageID 2216.) Counselor Panzner completed a Medical Source Statement As To Ability To Perform Work-Related Activities (Mental) form in July 2019. (*Id.* at PageID 2232-34.) Counselor Panzner checked boxes to indicate that Plaintiff would likely "have partial or full[-]day absences from work occurring [two] or more partial or whole days per month" due to her impairments or medication, and that Plaintiff's condition would likely deteriorate if she were "placed under stress, particularly the stress of an [eight] hour per day, [five] day per week job." (*Id.* at PageID 2234.) Counselor Panzner also checked boxes to indicate that Plaintiff was moderately impaired in the ability to "behave predictably, reliably, and in an emotionally stable manner," and to "tolerate customary work pressures." (*Id.* at PageID 2233-34.) Mr. Panzner indicated that Plaintiff otherwise experienced no or only mild impairment in the other areas of work-related mental functioning identified on the form. (*Id.* at PageID 2232-33.)

The ALJ concluded that counselor Panzner's opinions were only partially persuasive. (Decision, Doc. No. 7-14 at PageID 2458.) The ALJ was persuaded by counselor Panzner's opinions that Plaintiff had no impairment or was only mildly

7

impaired in many areas. (*Id.*) According to the ALJ, these opinions were supported by counselor Panzner's "narrative treatment notes that include[d] reports of [Plaintiff's] significant activities of living (Ex. 56F)." (*Id.*) He also reasoned that the opinions were "consistent with other mental health counseling notes also documenting substantial activities of functioning and living (Exs. 2F, 5F, 6F, 11F, 25F, 31F, 52F, and 55F)." (*Id.*) Conversely, the ALJ found that counselor Panzner's opinions of moderate limitation in certain areas were not persuasive. (*Id.*) The ALJ stated that counselor Panzner provided no explanation for these opinions, and reasoned that they were "inconsistent with the same noted substantial activities of living just indicated, and which are summarized throughout this decision (Exs. 2F, 5F, 6F, 11F, 25F, 31F, 42F, and 55F)." (*Id.*)

The ALJ then summarized Plaintiff's reports of activities that counselor Panzner documented in his progress notes:

> In Mr. Panzner's own counselling notes, he cites that [Plaintiff] reported that she was 'too busy' planning graduation events for her daughter and managing her husband's health conditions (Ex. 6F/5), described herself as the 'fixer' within the family (Ex. 56F/6), presented with an 'angry' mood but was laughing and smiling despite her claims that she 'has had it with everyone' (Ex. 56F/7), reported feeling 'very stressed' but was smiling and laughing throughout the session, with linear goal-directed thoughts and consistent attention (Ex. 56F/8), was described as an 'over-functioner' in her family (Ex. 56F/10), reported traveling with her partner and another couple to a baseball game in Cleveland (Ex. 56F/11), reported participation in a local craft show (Ex. 56F/13), reported successes selling jewelry items that she had made (Ex. 56F/14), reported successes selling new jewelry designs and participating in craft fair activities (Ex. 56F/15), reported enjoying a recent family trip to Las Vegas and Arizona over the Thanksgiving holiday with good tolerance of flying and the crowds in Las Vegas (Ex. 56F/17), reported staying with her mother since her stepfather's suicide and helping clean, replace furniture/carpet, and organize her stepfather's affairs (Ex. 56F/19), reported an ability to work on creative projects and enjoy the sale of a few jewelry items that she had made (Ex.

56F/28), reported a successful sale of many of her self-made jewelry items at a recent yard sale and excitement about participating in a craft and music fair (Ex. 56F/30), reported being able to keep up on housework, preparing for an upcoming vacation, and working on her jewelry projects (Ex. 56F/32), reported a trip to Nashville and attending a concert (Ex. 56F/33), reported increasing demand for her jewelry and art projects and being excited about being able to keep up with that demand (Ex. 56F/37), reported excitement about attending upcoming high school football games (Ex. 56F/38), and reported attending a professional football game (Ex. 56F/39). Such activities despite her reports of significant symptomatology are inconsistent with moderate mental work-related limitations.

(Decision, Doc. No. 7-14 at PageID 2458-59.)

### D.     State Agency Psychological Consultants

State agency psychological consultant Carl Tishler, Ph.D. completed a Disability Determination Explanation form in December 2017. (AR, Doc. No. 7-3 at PageID 118-20, 123-24.) Dr. Tishler found mild impairment in the "B Criteria" area of understanding, remembering, or applying information, and moderate impairment in three other areas (interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). (*Id.* at PageID 118.)  In the "Symptoms Evaluation" section of the form, Dr. Tishler stated that Plaintiff's alleged symptoms were "[f]ully [c]onsistent" with the "total medical and non-medical evidence" of record. (*Id.* at PageID 120.) He explained: "Also reports anxiety which is noted in [the] file [and was diagnosed with] PTSD [due to] recent traumatic experiences. Overall, medical evidence seems to support[] [Plaintiff's] statements and allegations. Considered fully consistent." (*Id.*)

In the mental RFC section of the form, Dr. Tishler indicated that Plaintiff had no limitations in the area of understanding and memory. (AR, Doc. No. 7-3 at PageID 123.) However, Dr. Tishler indicated that Plaintiff was moderately limited in the abilities of

9

carrying out detailed instructions and maintaining attention and concentration for extended periods. (AR, Doc. No. 7-3 at PageID 123.) He noted that "[a]nxiousness may cause distractibility" and opined that Plaintiff could perform "duties which are static and changes can easily be explained." (*Id.* at PageID 124.)

In the area of social interaction, Dr. Tishler found moderate impairment in the abilities of interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR, Doc. No. 7-3 at PageID 124.) He noted that Plaintiff had been diagnosed with PTSD and complained of anxiety, and he opined that Plaintiff was limited to engaging in "minimal[,] superficial interaction [with] coworkers and supervisors [and] minimal contact [with the] public." (*Id.*) In the final area of adaptation, Dr. Tishler found moderate limitation in Plaintiff's ability to respond appropriately to changes in the work setting. (*Id.*) Dr. Tishler referenced Plaintiff's PTSD diagnosis and opined that Plaintiff was limited to "duties which are routine and predictable." (*Id.*) In the "Additional Explanation" section of the form, Dr. Tishler wrote: "Drives as needed. Takes [thirteen-year-old] daughter to band practice and [Plaintiff] attends football games." (*Id.*)

Paul Tangeman, Ph.D. reviewed the updated record at the reconsideration level in January 2018. (AR, Doc. No. 7-3 at PageID 148-50, 153-54.) Dr. Tangeman indicated that he affirmed Dr. Tishler's assessment. (*Id.*)

The ALJ concluded that the state agency psychological consultants' findings were "not persuasive." (Decision, Doc. No. 7-14 at PageID 2459.) The ALJ reasoned that their

opinions were "not supported by the consistently substantially normal mental status exam findings, including normal cognition, memory, attention, concentration, appearance, speech, and language." (*Id.*) He further explained that these opinions were "inconsistent with the substantial activities engaged in by [Plaintiff], as summarized throughout this decision." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because he improperly evaluated her mental impairments and found that they were nonsevere. (SSE, Doc. No. 10 at PageID 3415.) According to Plaintiff, the ALJ's "failure to classify [her] mental health conditions as severe significantly prejudiced her disability claim." (*Id.* at PageID 3420.) Plaintiff further alleges that the ALJ failed to properly analyze the opinions of counselor Panzner. (*Id.* at PageID 3421-23.) For the reasons discussed below, the undersigned finds these assertions to be well-taken and therefore **RECOMMENDS** that the ALJ's decision be reversed and remanded.

### A. The ALJ Reversibly Erred In His Analysis of Plaintiff's Mental Impairments.

#### 1. Applicable law

An ALJ evaluates the "medical severity" of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" include the abilities and aptitudes necessary to perform most jobs, such

11

as the abilities to carry out simple instructions, use judgment, respond to supervisors and coworkers, and deal with changes in a routine work setting. 20 C.F.R. § 404.1522(b). Conversely, an impairment or combination of impairments is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (January 1, 1985).[5]

The claimant bears the burden of showing both that she has a severe impairment, and that the impairment meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her v. Comm'r of Soc. Sec.*, F.3d 388, 391 (6th Cir. 1999); *Higgs v . Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). To meet the duration requirement, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; *Harley*, 485 F. App'x at 803.

Notably, the claimant's burden of establishing a "severe" impairment at Step Two is a "*de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is ***a slight abnormality*** that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (emphasis added).

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

12

2.    **The ALJ's conclusion that Plaintiff's mental impairments are nonsevere is unsupported by substantial evidence.**

The ALJ provided a detailed summary of the mental health progress notes. (Decision, Doc. No. 7-14 at PageID 2447-49.) The ALJ commented that several mental status examinations showed "substantially normal" or "normal" findings, and highlighted Plaintiff's reports of improvement with medication. (*Id.*) The ALJ also cited numerous examples of Plaintiff's reports of social and other activities. (*Id.*) Although the ALJ acknowledged that the progress notes describe Plaintiff's subjective complaints of her symptoms, he concluded that they documented "generally substantially normal mental status exam findings, including with respect to memory, attention, concentration, fund of knowledge, appearance, speech, language, thought process, and cognition, as well as significant activities of living, including art and craftwork, concerts, travel, and football game attendance." (*Id.* at PageID 2449.) The ALJ also stated that Plaintiff "attended numerous counselling and medical treatment visits without evidence of significant, ongoing difficulties interacting with various providers." (*Id.*) The ALJ concluded:

> The summarized evidence supports a finding of "no" limitation to the functional area of understanding, remembering, or applying information; "mild" limitation to the functional area of interacting with others; "mild" limitation to the functional area of concentrating, persisting, or maintaining pace; and "mild" limitation to the functional area of adapting or managing oneself.

(*Id.* at PageID 2450.)  The ALJ relied on these conclusions to find that Plaintiff's mental impairments are nonsevere.

The undersigned concludes that the ALJ's analysis is erroneous in two respects. First, it does not account for significant evidence that Plaintiff required many adjustments

to her medications, and that she continued to exhibit and complain of significant anxiety and panic symptoms despite these changes. Second, the ALJ did not build the required logical bridge between his description of Plaintiff's activities and his conclusions that those activities fail to support the claimed severity of her mental impairments. Given that any impairment that is more than a "slight abnormality" should be considered severe, the undersigned finds that the ALJ's conclusions are not supported by substantial evidence.

### a. The ALJ's conclusion that Plaintiff's mental impairments were nonsevere is not supported by substantial evidence

The ALJ described as "substantially normal" or "normal" the mental status findings in August 2017, November 2017, January 2018, February 2018, June 2018, September 2018, November 2018, and September 2019. (Decision, Doc. No. 7-14 at PageID 2447-48.) This description neither acknowledges nor accounts for significant evidence of Plaintiff's mental impairments that was documented during those visits.

The August 2017 mental status examinations documented depressed, anxious, tired, and angry moods. (AR, Doc. No. 7-7 at PageID 449, 464.) In November 2017, Plaintiff reported "intense anxiety," "quite depressed" moods, irritability, and a "lot of" panic attacks during the past month. (*Id.* at PageID 458.) Nithya Ramanathan, M.D. documented moderate mood symptoms of depression and anxiety, and she diagnosed PTSD and a moderate and recurrent major depressive disorder. (*Id.* at PageID 459.) Dr. Ramanathan prescribed Lexapro and recommended that Plaintiff continue counseling. (*Id.* at PageID 461.) Later that month, Plaintiff's counselor noted complacent and/or anxious moods with circumstantial thought processes. (*Id.* at PageID 482, 484, 679.)

14

In January 2018, although Dr. Ramanathan documented normal mental status findings, Plaintiff reported "a lot of difficulty with increasing stress" and stated she was "still having some flashbacks and . . . more nightmares over the last few months." (AR, Doc. No. 7-7 at PageID 636.) Dr. Ramanathan increased Plaintiff's Lexapro dosage. (*Id.* at PageID 641.) Plaintiff told her therapist later that month that she "continue[d] to have issues with anxiety" and thought she had recently had a panic attack. (*Id.* at PageID 671.)

The ALJ acknowledged that Plaintiff reported in February 2018 that she attended a basketball game but was "anxious." (Decision, Doc. No. 7-14 at PageID 2447.) In fact, Plaintiff told her therapist that she felt "overly anxious" when she attended the game. (AR, Doc. No. 7-7 at PageID 669.) The ALJ also failed to acknowledge that the mental status examination showed a labile mood and circumstantial thought processes. (*Id.*)

Between April and June of 2018, Plaintiff reported that her symptoms improved after her Lexapro dosage was increased, and mental status examinations were normal. (AR, Doc. No. 7-7 at PageID 630, 633, 643, 647, 673.) But in July 2018, Plaintiff reported increased anxiety and her counselor observed that Plaintiff was "very physically tense" during the session. (AR, Doc. No. 7-7 at PageID 655.) Although Plaintiff's counselor noted a normal mental status examination later that month, Plaintiff reported that she felt like her medication was not working because she was experiencing a "short temper and [had not] felt good and fel[t] exhausted all day long." (*Id.* at PageID 627.)

In September 2018, Plaintiff told Dr. Ranganathan that Lexapro was continuing to help with her depression and mental status findings were normal. (AR, Doc. No. 7-7 at

PageID 657.) Nevertheless, Dr. Ranganathan increased Plaintiff's Trazadone dosage and discussed additional options of increasing Lexapro again or prescribing Wellbutrin. (*Id.*)

Although Dr. Ranganathan noted normal mental status findings at the next visit in November 2018, Plaintiff said that her depression had increased over the last few months. (AR, Doc. No. 7-7 at PageID 650, 653.) Dr. Ranganathan continued Lexapro and Trazadone, and she additionally prescribed Wellbutrin. (*Id.* at PageID 654.) At the next psychiatric visit in December 2018, Plaintiff reported only a slight change in her moods since the addition of Wellbutrin. (AR, Doc. No. 7-9 at PageID 1388.) She rated her depression at a level of nine out of ten (with ten being the highest) and complained of aggravated PTSD symptoms. (*Id.* at PageID 1388-89.) Pamela Studer, C.N.P. noted that Plaintiff appeared with a dysthymic mood, and increased Plaintiff's Wellbutrin dosage. (*Id.* at PageID 1392.)

In January 2019, Plaintiff's counselor documented a depressed mood and affect, and Plaintiff reported low motivation and anxiety. (AR, Doc. No. 7-9 at PageID 1328.) Later that month, Plaintiff told Nurse Studer that although her mood was "better," there was still "room for improvement." (*Id.* at PageID 1380.) Nurse Studer documented a dysthymic mood, and she again increased Plaintiff's Wellbutrin dosage. (*Id.* at PageID 1384.) At the next visit in February 2019, Plaintiff told Nurse Studer that although she was less irritable, her depression was otherwise the same. (AR, Doc. No. 7-9 at PageID 1363.) Mental status examination findings were normal, but Nurse Studer nevertheless prescribed Mirtazapine. (*Id.* at PageID 1366.) Later that month, Plaintiff's counselor documented a depressed mood and congruent affect. (*Id.* at PageID 1334.)

16

At the next psychiatric visit in March 2019, although mental status findings were normal, Plaintiff reported continued depression and irritability. (*Id.* at PageID 1353.) Plaintiff's provider discontinued Wellbutrin and prescribed Trileptal. (*Id.* at PageID 1357.) Mental status findings were again normal at a counseling session two days later (*id.* at PageID 1337), but later that month Plaintiff's counselor noted a reserved affect, slowed/lethargic motor activity, and only fair insight. (AR, Doc. No. 7-12 at PageID 2216, 2220-21.) In April 2019, Plaintiff said she felt "pretty depressed" and Nurse Studer documented a dysthymic mood. (AR, Doc. No. 7-9 at PageID 1347.) Nurse Studer stopped Trileptal and increased Plaintiff's Lexapro dosage. (*Id.* at PageID 1348.)

Plaintiff's counselor noted only a slightly anxious mood and affect in May 2019. (*Id.* at PageID 1339.) Later that month, Plaintiff rated her depression at a four to five out of ten and mental status findings were normal. (*Id.* at PageID 1372, 1375.) Subsequent progress notes dated through February 2020 documented normal mental status findings on several occasions. (AR, Doc. Nos. 7-12 at PageID 2274, 2279, 2285, 2291, 2311, 2319, 2323, 2325.) However, Plaintiff's providers documented anxious and/or depressed moods and a congruent and/or restricted affect on several other occasions. (AR, Doc. No. 7-12 at PageID 2281, 2283, 2301, 2307, 2309, 2313, 2315, 2317, 2321.) Significantly, although a mental status examination in February 2020 was normal, Plaintiff reported worsening flashbacks after an incident in her neighborhood. (*Id.* at PageID 2271-74.) Stephanie Tronolone, P.M.H.N.P.-B.C. continued Plaintiff on Lexapro and Trazodone but also prescribed Propranolol on an as-needed basis. (*Id.* at PageID 2275.)

17

The ALJ acknowledged that Plaintiff "appeared anxious" during mental status examinations in May, June, and August of 2020, but noted that the documented findings were otherwise normal. (Decision, Doc. No. 7-14 at PageID 2448.) The ALJ did not reference any additional abnormal findings until May 2021, when a provider observed that Plaintiff presented with an "anxious mood and slightly restricted affect." (*Id.*) Although it is true that several mental status examinations through May 2021 were normal, Plaintiff presented with anxious moods and a restricted affect on several other occasions. (AR, Doc. No. 7-20 at PageID 2981, 2987, 2996, 2998, 3005, 3011, 3016, 3022, 3024, 3026, 3031, 3037, 3090, 3092, 3094, 3097.) Plaintiff's providers also documented depressed moods and congruent affect during that time. (AR, Doc. No. 7-20 at PageID 2981, 2987, 2996, 2998, 3005, 3011, 3016, 3022, 3024, 3026, 3031.) The ALJ did not acknowledge or account for these documented findings.

Significantly, several progress notes showed that although her medications were frequently adjusted, Plaintiff continued to experience symptoms that were sometimes elevated. For example, Plaintiff reported continued anxiety and PTSD symptoms in May 2020, despite the recent addition of Propranolol. (*Id.* at PageID 2983-84.) Nurse Tronolone noted that Plaintiff appeared anxious and directed Plaintiff to take Propranolol twice per day, instead of only as needed.  (*Id.* at PageID 2987-88.) Despite this adjustment, Plaintiff reported higher anxiety and depression in June 2020. (AR, Doc. No. 7-20 at PageID 3001.) Nurse Tronolone increased Plaintiff's Propranolol dosage. (*Id.* at PageID 3007.) At the next visit in July 2020, Plaintiff said she had not had any panic attacks on the higher dose but was still experiencing continuing anxiety at times. (*Id.* at

18

PageID 3014.) Nurse Tronolone noted an anxious mood and affect and switched Plaintiff from Lexapro to Cymbalta "due to partial response and residual symptoms." (*Id.* at PageID 3016-18.) After Plaintiff stated in August 2020 that her depressive symptoms had increased since the medication change, Nurse Tronolone increased Plaintiff's Cymbalta dosage. (*Id.* at PageID 3028, 3033.)

At the next visit in September 2020, Plaintiff reported that her depression had been improving since the increase in Cymbalta. (AR, Doc. No. 7-20 at PageID 3039-40.) During the next few months, with the exception of a November 2020 counseling session when Plaintiff exhibited a depressed mood and affect (*id.* at PageID 3061), Plaintiff's providers documented normal mental status findings. (AR, Doc. No. 7-20 at PageID 3042-43, 3048, 3050, 3055-56, 3063, 3068-69, 3074.)

In January 2021, however, Plaintiff told Nurse Tronolone that her depression was "managed" but her anxiety was worsening. (AR, Doc. No. 7-20 at PageID 3080.) Nurse Tronolone increased Plaintiff's Propranolol dosage. (*Id.* at PageID 3081.) Despite the dosage increase, Plaintiff's counselor documented anxious and exhausted moods later that month. (*Id.* at PageID 3086, 3088.) In March 2021, Plaintiff reported that she was "having a very bad time." (*Id.* at PageID 3104.) A mental status examination showed an anxious mood and affect, and Plaintiff was restless and tearful throughout the session. (*Id.*) Although Plaintiff reported increased stability later that month, her counselor nevertheless documented a slightly depressed mood and affect. (*Id.* at PageID 3106.) Plaintiff exhibited an anxious mood and affect in April and May 2021, and Nurse

Tronolone again increased Plaintiff's Propranolol dosage in May 2021. (*Id.* at PageID 3108, 3115, 3121.)

The ALJ acknowledged that Plaintiff presented with an angry mood during a June 2021 counseling session, but stated that Plaintiff's counselor also noted that she laughed and smiled. (Decision, Doc. No. 7-14 at PageID 2448-49 (citing AR, Doc. No. 7-23 at PageID 3344).) The ALJ also acknowledged Plaintiff's report of being "very stressed" during a counseling session later that month, although he again noted that she laughed and smiled. (*Id.* at PageID 2449 (citing AR, Doc. No. 7-23 at PageID 3345).) The ALJ's next reference to abnormal findings was a statement that psychiatric progress notes in March, September, October, and December of 2022 showed "an anxious, sad mood and dysphoric or euphoric affect," but were otherwise normal. (*Id.* (citing AR, Doc. No. 7-23 at PageID 3240-41, 3252-54, 3262-64, 3273-75, 3284-86).) The ALJ stated that mental status examinations during psychiatric visits in May and June of 2023 "continued to reveal normal findings, except for an anxious, sad mood, dysphoric affect, and loneliness." (*Id.* (citing AR, Doc. No. 3311-13, 3324-26).)

Although the ALJ accurately summarized these progress notes, he failed to acknowledge that several other psychiatric and counseling progress notes during this time period showed abnormalities that included anxious, angry, or sad moods; an anxious, restricted, or dysphoric affect; and only fair insight and judgment. (*See, e.g.,* AR, Doc. Nos. 7-20 at PageID 3131, 3141, 3154, 3165, 3176, 3251, 3294-98; 7-23 at PageID 3342, 3355-57, 3364-65, 3368, 3376-89, 3391.) The ALJ also failed to acknowledge that Plaintiff continued to report significant symptoms despite further adjustments to her

medications. For example, Plaintiff stated in June 2021 that although panic attacks were not occurring as frequently, she was still experiencing anxiety at a level of seven out of ten that occurred "most of the day [and] most days of the week." (AR, Doc. No. 7-20 at PageID 3134.) Evan Silverland, P.M.H.N.P increased Plaintiff's Propranolol dosage. (*Id.* at PageID 3135.) In September 2021, Plaintiff reported increased depression and anxiety, and Nurse Silverland documented a sad and anxious mood. (*Id.* at PageID 3154-57.) Plaintiff reported similar levels of symptoms in November 2021. (*Id.* at PageID 3165.) Nurse Silverland again documented a sad and anxious mood, and he prescribed Rexulti. (*Id.* at PageID 3165-69.)

In January 2022, Plaintiff complained of increased situational stressors and reported a few recent "spells" of panic symptoms. (AR, Doc. No. 7-21 at PageID 3178.) When Plaintiff exhibited a sad and anxious mood and dysphoric affect in March 2022, Nurse Silverland increased Plaintiff's Rexulti dosage. (*Id.* at PageID 3240-43.) In June 2022, Plaintiff complained of continued difficulty leaving the house alone or being around others due to anxiety and panic attacks. (*Id.* at PageID 3252.) Nurse Silverland again increased Plaintiff's Rexulti dosage. (*Id.* at PageID 3254.) In October 2022, Plaintiff reported continued irritability, a low mood, fatigue, and anhedonia. (*Id.* at PageID 3275.) Nurse Silverland documented a sad and anxious mood and dysphoric affect, and he increased Plaintiff's Duloxetine dosage. (*Id.* at PageID 3271-76.) At the next visit in December 2022, Plaintiff reported an improvement in mood and irritability with the increased dose, but said that her anxiety remained high. (*Id.* at PageID 3287.) Nurse Sutherland again increased Plaintiff's Duloxetine dosage in March 2023 in

response to Plaintiff's complaints of continued depressive symptoms and panic attacks. (*Id.* at PageID 3299-3300.)

Accordingly, although Plaintiff's mental status examinations showed some normal findings and she sometimes did better on medications, the overall record shows that any improvements in her symptoms were brief and sporadic. On numerous occasions, the records show that Plaintiff often experienced depression and anxiety symptoms, as well as panic attacks, while taking her medications. Further, her mental status examinations often showed depressed and anxious moods, flat affect, circumstantial thought content, and fair insight and judgment. The ALJ's analysis of the severity of Plaintiff's mental impairments is not supported by substantial evidence because it does not acknowledge or address the significant evidence in the record that supports Plaintiff's mental health complaints.

The undersigned is unpersuaded by Defendant's argument that "Plaintiff is arguing that this Court should reweigh evidence already considered by the ALJ and come to a contrary conclusion," which is "not the role of this Court." (Mem. In. Opp., Doc. No. 12 at PageID 3439-40 (citing *Jennifer L.S. v. Comm'r of Soc. Sec.*, No. 2:20-cv-6282, 2022 U.S. Dist. LEXIS 11068, at *29-30 (S.D. Ohio Jan. 21, 2022) (Jolson, M.J.), *report and recommendation adopted*, No. 2:20-cv-6282, 2022 U.S. Dist. LEXIS 21053 (S.D. Ohio Feb. 7, 2022) (Morrison, D.J.) (internal citation omitted)).) It is true that the ALJ need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014).

Nevertheless, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence." *Id.*

Here, the ALJ's failure to acknowledge the ongoing difficulties that Plaintiff experienced over a long period of time despite frequent changes to her medication regimen—and the fact that Plaintiff participated in consistent, outpatient treatment for medication management and counseling for over a six-year period from the alleged disability onset date to the date of the ALJ's decision—shows that the ALJ did not resolve the conflicts in the evidence. The ALJ's apparent failure to consider significant evidence that contradicts his conclusions signifies an impermissibly selective review of the record. See *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014) (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis)); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). For these reasons, the undersigned concludes that the ALJ's finding that Plaintiff's mental impairments are nonsevere is not supported by substantial evidence.

> **b. The ALJ failed to build a logical bridge between Plaintiff's reported activities and his conclusion that her mental impairments were nonsevere**

The ALJ relied heavily on his reasoning that Plaintiff's mental impairments were nonsevere because of her "significant activities of living, including art and craftwork, concerts, travel, and football game attendance." (Decision, Doc. No. 7-14 at PageID 2449.) For example, the ALJ found that counselor Panzer's findings of mild limitations

were "supported by his narrative treatment notes that include reports of [Plaintiff's] significant activities of living (Ex. 56F), and which [were] consistent with other mental health counseling notes also documenting substantial activities of functioning and living (Exs. 2F, 5F, 6F, 11F, 25F, 31F, 52F, and 55F)." (*Id.* at PageID 2458.) The ALJ also discounted counselor Panzer's findings of moderate limitations because they were "inconsistent with the same noted substantial activities of living just indicated, and which are summarized throughout this decision (Exs. 2F, 5F, 6F, 11F, 25F, 31F, 42F, and 55F)." (*Id.*) Finally, the ALJ found the state agency reviewing psychologists' findings to be "not persuasive" because they were "inconsistent with the substantial activities engaged in by [Plaintiff], as summarized throughout this decision." (*Id.* at PageID 2459.)

The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ must "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb, 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011)).

The undersigned also recognizes that although the ability to perform activities such as "household tasks, hobbies . . . or social programs" is not direct evidence of an ability to do gainful work, see 20 C.F.R. § 404.1572, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x. 515, 532 (6th Cir. 2014) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997); *Blacha v. Sec. of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)). However, ALJs must also consider that "[t]he regulations require [them] to measure the claimant's RFC in terms of their ability to perform work on a sustained basis for a forty-hour work week." *Lindsey v. Comm'r of Soc. Sec.*, No. 3:20cv1127-JGC, 2021 U.S. Dist. LEXIS 187551, at *11 (N.D. Ohio Sept. 30, 2021) (citation omitted); *see also Decorrevont v. Comm'r of Soc. Sec.*, No. 1:19-cv-137, 2020 U.S. Dist. LEXIS 1597, at *41 (S.D. Ohio Jan. 6, 2020) (Litkovitz, M.J.) (the ALJ did not explain how the plaintiff's daily activities were "inconsistent with the ability to perform sustained work activity [eight] hours each day and [five] days per week").

Here, the ALJ relied on Plaintiff's "significant activities of living, including art and craftwork, concerts, travel, and football game attendance" to support his conclusion that Plaintiff's mental impairments are nonsevere. (Decision, Doc. No. 7-14 at PageID 2449.) But the ALJ did not explain why these activities—which did not occur during forty hours of a workweek—show that Plaintiff is capable of sustained unskilled, semi-skilled, or skilled work on a full-time basis. Nor did the ALJ explain how these activities show that Plaintiff can be around supervisors, coworkers, and the public without any

25

restriction in a work setting on a full-time basis, or why Plaintiff requires no other work-related restrictions related to her mental limitations. The ALJ's failure to build a logical bridge between the cited evidence and his conclusions is erroneous because it prevents the Court from engaging in meaningful judicial review. *See Blakley*, 581 F.3d at 409 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

### 3.    The ALJ's errors are not harmless.

When determining a claimant's RFC, an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Typically, if an ALJ finds at least one severe impairment, then a failure to find additional severe impairments at Step Two "[does] not constitute reversible error" if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007), citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir.1987). In other words, as long as the ALJ "finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Comm'r. of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

Nevertheless, this harmless error rule "is predicated on the notion that the ALJ 'properly could consider claimant's [nonsevere impairments] in determining whether claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity.'" *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th

Cir. 2015) (citing *Maziarz*, 837 F.2d at 244 (6th Cir. 1987)). In *Winn*, the court concluded

that the ALJ's determination that the plaintiff had no severe mental impairments was not

based on substantial evidence, and that the ALJ's RFC determination "did not consider

[the plaintiff's] mental impairments in a meaningful way." *Winn*, 615 F. App'x at 325-26.

Accordingly, the ALJ's error was not harmless and required reversal. *Id.* at 326.

Similarly, in *White v. Comm'r of Soc. Sec.*, the Sixth Circuit held that the ALJ

reversibly erred by failing to find a significant mental impairment. 312 F. App'x 779,

787-88 (6th Cir. 2009). The *White* court explained that although the ALJ did not err in

finding no severe mental impairments, the ALJ erred because he "gave no explanation for

totally discounting the objective evidence of White's mental impairment in determining

White's RFC." *Id.* at 787.  The court found that the ALJ mischaracterized the evidence

regarding the plaintiff's mental impairments, and concluded that because the ALJ "did

not accurately state the evidence used to support his finding, his total discounting of the

mental impairment is not supported by substantial evidence." *Id.* at 787-88. The court

also concluded that because the hypothetical question (that restated the RFC) posed by

the ALJ to the vocational expert did "not accurately portray White's limitations," the ALJ

erred in relying on the vocational expert's answer to the question. *Id.* at 789. This was

reversible error. *Id.* at 790.

The facts in this case are analogous to *Winn* and *White.* After concluding at Step

Two that Plaintiff's mental impairments were nonsevere, the ALJ stated that he

nevertheless accounted for the conditions in the RFC. (Decision, Doc. No. 7-14 at

PageID 2450.) As discussed above, however, the ALJ's determination that Plaintiff does

27

not have a severe mental impairment is unsupported by substantial evidence. Thus, both

his determination that Plaintiff does not have any severe mental impairments—and his

conclusion that no mental limitations are warranted in the RFC—were unsupported by

substantial evidence. *See White*, 312 F. App'x at 787-88. Because the ALJ's RFC

determination does "not consider [Plaintiff's] mental impairments in a meaningful way,"

the errors are not harmless and require reversal. *See Winn*, 615 F. App'x at 325-26.

> **B.** **The ALJ Reversibly Erred When Evaluating The Opinions of Counselor Panzner.**
>
> **1.** **Applicable law**

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in

the record. 20 C.F.R. § 416.920c (emphasis added). A "medical opinion" is a "statement

from a medical source about what [an individual] can still do despite [his] impairment(s)"

and whether the individual has one or more impairment-related limitations or restrictions.

20 C.F.R. § 416.913(a)(2). By contrast, a statement from a medical source about an issue

reserved to the Commissioner—such as whether an individual is disabled—need not be

addressed by the ALJ. 20 C.F.R. § 416.920b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for

evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not

defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R.

§ 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion

and prior administrative medical finding by considering the following factors: (1)

supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 416.920c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024 U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[6] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 416.920c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id.*

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565,

---

[6] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### 2.  Discussion

The ALJ stated that he was unpersuaded by counselor Panzner's opinions that Plaintiff was moderately limited in several areas. (Decision, Doc. No. 7-14 at PageID 2458.) He reasoned that counselor Panzner "provided no explanation in support of [the] moderate limitations" and that the limitations were "inconsistent with the . . . substantial activities of living . . . which are summarized throughout this decision." (*Id.*)

With these statements, the ALJ arguably explained his consideration of the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(b)(2). As set forth above, however, the undersigned finds that the ALJ erred by relying on Plaintiff's activities to conclude that her mental impairments are nonsevere. Accordingly, the ALJ's analysis of the consistency factor with respect to counselor Panzner's opinions that Plaintiff was moderately limited in certain areas is not supported by substantial evidence.

The ALJ supported his conclusion with a summary of Plaintiff's statements and activities that were documented in counselor Panzner's progress notes. (Decision, Doc. No. 7-14 at PageID 2458-59.) The ALJ concluded that "[s]uch activities despite her reports of significant symptomatology are inconsistent with moderate mental work-related limitations." (*Id.* at PageID 2459.) But the ALJ did not explain ***how*** or ***why*** these

32

activities show that Plaintiff experiences only mild mental limitations when performing full-time work in a work setting. Thus, the ALJ did not build a logical bridge between the cited evidence and his conclusion, as is required to allow for judicial review.

Moreover, the ALJ also failed to consider the consistency of counselor Panzner's opinions with the state agency psychological consultants' opinions. As discussed above, the state agency consultants found moderate impairment in three of the "B Criteria" areas of functioning and in several specific work-related abilities within those areas. (AR, Doc. No. 7-3 at PageID 118-20, 123-24, 148-50, 153-54.) They opined that Plaintiff was limited to work involving static duties where changes can be easily explained, minimal and superficial interaction with coworkers and supervisors, minimal contact with the public, and duties that are routine and predictable. (*Id.*) Although the consultants' findings of moderate impairment are consistent with the areas of moderate impairment that counselor Panzner identified, the ALJ ignored that consistency.

The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's flawed reliance on Plaintiff's daily activities and his failure to acknowledge the consistency of the opinions of counselor Panzner and the state agency consultants leads the undersigned to conclude that the ALJ did not resolve conflicts in the evidence. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741

F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). Thus, the ALJ's conclusions regarding counselor Panzner's opinions that Plaintiff was moderately limited are unsupported by substantial evidence. This constitutes reversible error and provides another reason why the case should be remanded.

## V.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's mental impairments, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's

regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's

disability claim under the required five-step sequential analysis to determine anew

whether Plaintiff was under a disability and whether her applications for Disability

Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 10) be GRANTED;

2.    The Court REVERSE the Commissioner's non-disability determination;

3.    No finding be made as to whether Plaintiff was under a "disability" within
      the meaning of the Social Security Act;

4.    This matter be REMANDED to the Social Security Administration under
      Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent
      with this Decision and Order; and

5.    This case be terminated on the Court's docket.

s/ *Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **FOURTEEN** days after

being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d),

this period is extended to **SEVENTEEN** days if this Report is being served by one of the

methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall

specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).